803 F.2d 720
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
IN RE: L. T. RUTH COAL COMPANY, Debtor
GENERAL ELECTRIC CREDIT CORP., Plaintiff-Appellee
v.
L. T. RUTH COAL COMPANY, Defendant
LEONARD T. RUTH, Defendant-Appellant.
 No. 85-5990.
 United States Court of Appeals, Sixth Circuit.
 Sept. 17, 1986.
 
 Before: KRUPANSKY, NELSON, and RYAN, Circuit Judges.
 DAVID A. NELSON, Circuit Judge.
 
 
 1
 The sole shareholder of a bankrupt corporation appealed to the district court from an order of the bankruptcy court denying a nunc pro tunc extension of a stay of the disposition at foreclosure sale of certain of the corporation's assets. The district court held that the shareholder was not a proper party to bring the appeal and granted a creditor's motion to dismiss on that basis. We agree with the district court and affirm its judgment.
 
 
 2
 In 1981 General Electric Credit Corporation (GECC) lent money to L. T. Ruth Coal Company (the Company), taking a security interest in certain mining equipment and receiving a personal guaranty of the indebtedness from the Company's sole shareholder, Leonard T. Ruth. The Company eventually defaulted, and in November of 1983 GECC filed suit in state court against both the Company and Mr. Ruth. Summary judgment was granted to GECC in February 1984, apparently leaving only execution proceedings still pending in state court. The state court required GECC to liquidate the collateral repossessed from the Company before levying execution on other property belonging to the Company or on property belonging to Mr. Ruth.
 
 
 3
 On March 16, 1984, the Company filed a Chapter 11 bankruptcy petition. GECC was automatically stayed from disposing of the collateral, and it sought relief from the stay. The bankruptcy court ruled that the stay would remain in place until July 14, 1984, at which time the stay would be deemed lifted absent further action by the court. GECC's state court execution proceeding against the Company and Mr. Ruth was removed to the bankruptcy court.
 
 
 4
 On July 13, 1984, the Company filed a motion to extend the stay. Because of the "indeterminate status of the Bankruptcy Courts during this period," no hearing on the motion was held for some months. On August 22, 1984, GECC filed an "objection" to the motion and gave notice to the Company and Mr. Ruth that it intended to sell the collateral on September 25, 1984. The sale took place as scheduled; it netted $42,100, leaving a deficiency of $92,487.62. GECC obtained writs of execution from the U.S. District Court, and Mr. Ruth moved to quash the writs. The district court sent all proceedings pending in that court to the bankruptcy court.
 
 
 5
 In an order entered on April 1, 1985, the bankruptcy court overruled the Company's motion to extend the automatic stay and upheld the propriety of the sale of the collateral the preceding September, no stay having been in effect at that time. The bankruptcy court quashed the writs of execution issued by the district court, however, holding that the federal court could not issue valid writs of execution on a state court judgment. GECC's proceeding against the Company and Mr. Ruth was remanded to the state court with a proviso that no execution could be sought against the Company.
 
 
 6
 On April 11, 1985, Mr. Ruth filed a notice of appeal to the district court, challenging the bankruptcy court's refusal to extend the automatic stay. Mr. Ruth's brief in this court says that he also wished to challenge the commercial reasonableness of the sale.
 
 
 7
 The district court granted GECC's motion to dismiss the appeal on the ground that Mr. Ruth had no standing to appeal:
 
 
 8
 "After careful consideration of the record, it is this Court's conclusion that the appellant, L.T. Ruth, is involved in this action only as the guarantor of the agreement between GECC and L.T. Ruth Coal Company. As a guarantor, his interest should only be in the commercial reasonableness of the public auction - an issue that is not before the Court.[1] It thus appears that the proper party to appeal the Bankruptcy Court's ruling on the debtor's motion to extend the stay would be the debtor, L.T. Ruth Coal Company, rather than the guarantor, L.T. Ruth.
 
 
 9
 The parties agree that the only issue presented on the appeal of that order to this court is whether or not Mr. Ruth had standing to appeal the order of the bankruptcy court to the district court.
 
 
 10
 Under the former Bankruptcy Act, "a person aggrieved" by a bankruptcy court order could appeal to the district court. Section 39(c) of the Bankruptcy Act of 1898, 11 U.S.C. Sec. 67(c) (1976) [repealed]. The new Bankruptcy Code deleted Sec. 39(c), but did not replace it with anything else. Bankruptcy Rules 8001 et seq., which now govern bankruptcy appellate procedure, are silent on the question of who may appeal a bankruptcy court order.
 
 
 11
 The general consensus among courts that have considered the matter seems to be that the former Bankruptcy Act's "person aggrieved" test should be applied as a matter of judge-made law. See, e.g., In re Cosmopolitan Aviation Corporation, 763 F.2d 507, 513 (2d Cir. 1985); Matter of Fondiller, 707 F.2d 441, 443 (9th Cir. 1983); Unsecured Creditors Committee v. Leavitt Structural Tubing Company, 55 B.R. 710, 711 (N.D. Ill. 1985); In re Multiple Services Industries, Inc., 46 B.R. 235, 236 (E.D. Wisc. 1985).
 
 
 12
 GECC urges us to adopt a stricter "party aggrieved" test. The case for doing so seems thin, but the choice between a "person" test and a "party" test is one we need not make here; to have standing under either test the appellant must be "aggrieved," and Mr. Ruth does not meet that requirement.
 
 
 13
 In In re Sunningdale Country Club, 351 F.2d 139, 143 (6th Cir. 1965), which presented a question of standing under the Bankruptcy Act's "person aggrieved" test, we held it to be
 
 
 14
 "within the province of the District Judge to find that neither appellant [former shareholders and general creditors of debtor corporation] was 'a person aggrieved' . . . . As stated by the Ninth Circuit, the authority conferred by this section to petition for review of a referee's order 'is restrictive. It is granted only to those who have immediate interests in the bankrupt estate as such and does not include those who would be indirectly affected by the order."' (quoting Rogers v. Bank of America National Trust and Savings Assn., 142 F.2d 128, 129 (9th Cir. 1944). Emphasis supplied.)
 
 
 15
 Mr. Ruth is a step further down the road than the appellants in Sunningdale Country Club, because, unlike them, he is not only a stockholder and creditor of the bankrupt corporation, but is also a guarantor of the bankrupt corporation's debt. As a guarantor, he can be held to answer for the deficiency judgment which the bankruptcy court's order sanctioned. In our view, however, this does not give Mr. Ruth the requisite "immediate interest in the bankrupt estate."
 
 
 16
 In Rogers (the case quoted Sunningdale Country Club), a bank had brought a state court action in which the bank asserted it was the true owner of a farm which would otherwise be the sole asset of the debtors' estate. A bankruptcy referee awarded the debtors' attorney a fee of $1,500 to be paid out of the estate. The Bank sought review of the referee's order, asserting that it had standing to do so because the $1,500 would necessarily be paid out of rents and profits of the land to which it was claiming title in state court. The Court of Appeals for the Ninth Circuit held that the bank could not obtain review of the order: the bank was held to have no "immediate [interest]," being only "indirectly affected" by the order. 142 F.2d at 129.
 
 
 17
 "The Bank has filed no claim in the bankruptcy proceedings; it does not occupy the status of a creditor or lienor. It is a stranger to those proceedings and therefore cannot be considered a 'person aggrieved' within the meaning of Sec. 39, sub.c.
 
 
 18
 The Bank argues that because it was served with notice of the hearing before the conciliation commissioner, filed objections, and took an active part therein, it is now entitled to review the order resulting. None of the cases cited in support of the argument suggest that merely because a person is allowed to participate in a hearing before the conciliation commissioner, he may petition for review even though he has no direct interest in the order to be reviewed. Such a conclusion would be directly contrary to the terms of Sec. 39, sub.c, and cannot be supported." 142 F.2d at 129.
 
 
 19
 The attenuated interest of Mr. Ruth in the case at bar is closely analogous to that of the bank in Rogers.
 
 
 20
 Rogers was followed in Stone v. Huffstutler, 227 F.2d 217 (5th Cir. 1955), where two individuals claimed that a bankrupt corporation had assumed their income tax liabilities. The referee entered an order denying a claim of the United States against the bankrupt corporation for these taxes, and the court of appeals held that the individuals had no standing to obtain review of the district court's order.
 
 
 21
 In our situation Mr. Ruth seeks to interpose his bankrupt corporation between himself and a creditor, just as the appellants tried to do in Stone. That does not create a sufficiently direct interest to confer standing to appeal.
 
 
 22
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 The April 1, 1985 Order of the Bankruptcy Court remanded all issues regarding the commercial reasonableness of the sale to the Fayette Circuit Court. This portion of the Order was not appealed."